# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. _____

TYLER RATZLAFF,
TOBY COTTON, and
TREVOR TABOR

    Plaintiffs,

v.

SUMMIT MIDSTREAM PARTNERS, LLC, a Delaware limited liability company, and
ARCHROCK SERVICES, L.P., a Delaware limited partnership

    Defendants.

## COMPLAINT FOR DAMAGES AND JURY DEMAND

Plaintiffs, Tyler Ratzlaff, Toby Cotton, and Trevor Tabor (collectively "Plaintiffs"), by and through their counsel of record, the law firm of Springer and Steinberg, P.C., for their Complaint for Damages and Jury Demand against Defendants Summit Midstream Partners, LLC and Archrock Services, L.P. (collectively ("Defendants"), state and allege as follows:

### I. PARTIES

1. Plaintiff Tyler Ratzlaff ("Ratzlaff") is a natural person and resident of the state of Colorado, residing at 225 Ponderosa, Parachute, Colorado 81635.

2. Plaintiff Toby Cotton ("Cotton") is a natural person and resident of the state of Colorado, residing at 2998 Fenwick Lane, Grand Junction, Colorado 81504.

3. Plaintiff Trevor Tabor ("Tabor") is a natural person and resident of the state of Colorado, residing at 2884 Pinehurst Lane, Grand Junction, Colorado 81503.

4. Defendant Summit Midstream Partners, LLC ("Summit") is a foreign limited liability company, licensed and organized under the laws of the state of Delaware, and at all times relevant, was authorized to do business and was doing business in the state of Colorado.

5. Summit's principal place of business is One Shell Plaza, 910 Louisiana Street, Suite 4200, Houston, Texas 77002.

6. Upon information and belief, Summit is in good standing.

7. Summit's registered agent is Capitol Corporate Services, Inc., located at 36 South 18th Avenue, Suite D, Brighton, Colorado 80601.

8. Defendant Archrock Services, L.P. ("Archrock") is a foreign limited partnership, licensed and organized under the laws of the state of Delaware, and at all times relevant, was authorized to do business and was doing business in the state of Colorado.

9. Archrock's principal place of business is 9807 Katy Freeway, Suite 100, Houston, Texas 77024.

10. Upon information and belief, Archrock is in good standing.

11. Archrock's registered agent is Corporation Service Company, located at 1900 W. Littleton Boulevard, Littleton, Colorado 80120.

## II. Jurisdiction and Venue

12. Summit and Archrock are both incorporated in Delaware with their respective principal places of business in Texas, while Plaintiffs are residents and citizens of Colorado.

13. Accordingly, the parties are citizens of different states and complete diversity exists.

14. The matter in controversy exceeds the sum or value of $75,000.00.

15. Therefore, original jurisdiction over this controversy exists in the United States District Court pursuant to 28 U.S.C.A. §1332(a).

16. Venue in the United States District Court for the District of Colorado is proper pursuant to 28 U.S.C.A. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims in this matter occurred in Colorado, specifically Weld County, Colorado.

### III. General Allegations

17. Plaintiffs incorporate by reference all allegations contained above as if fully set forth herein.

18. On June 5, 2019, Plaintiffs were working at the Summit Midstream Hereford Plant, located at 67509 Weld County Road 71, Grover, Colorado 80729 (the "Plant").

19. Plaintiffs were performing welding work on compressors located at the Plant in order to change from a smaller intercooler to a larger intercooler.

20. On June 5, 2019, Plaintiffs were removing flanges and piping from the pressure vessel on one of the compressors to switch the intercoolers.

21. Removing flanges and piping from the pressure vessel on the compressor required Plaintiffs to remove bolts using tools.

22. Upon information and belief, the compressor and pressure vessel had been locked out and tagged out prior to Plaintiffs beginning work on June 5, 2019.

23. Plaintiffs believed that there should not have been high, dangerous, or unsafe levels of hazardous chemicals or vapors present in the unit because it was locked out and tagged out.

24. Plaintiffs started removing the bolts from the pressure vessel on the compressor with wrenches and sockets.

25. However, one bolt was stuck and could not be removed by hand tools.

26. Plaintiffs then switched to a corded impact wrench to remove the stuck bolt.

27. Ratzlaff operated the corded impact wrench on the front of the bolt while Tabor held a wrench to the back of the bolt.

28. While Ratzlaff and Tabor were trying to remove the stuck bolt, Cotton was nearby in the compressor performing other work.

29. Upon information and belief, and unbeknownst to Plaintiffs, the compressor in which Plaintiffs were working on June 5, 2019 contained highly dangerous and unreasonable levels of hydrocarbon gases, including natural gas liquids.

30. Upon information and belief, and unbeknownst to Plaintiffs, Defendants failed to ensure that the compressor in which Plaintiffs were working on June 5, 2019 did not contain highly dangerous and unreasonable levels of hydrocarbon gases.

31. Upon information and belief, and unbeknownst to Plaintiffs, Defendants allowed highly dangerous and unreasonable levels of hydrocarbon gases to collect in the compressor in which Plaintiffs were working on June 5, 2019.

32. Upon information and belief, as Ratzlaff began operating the corded impact wrench, the spark inside the impact wrench ignited the gases present in the compressor.

33. The ignited gases caused a flash fire to occur inside the compressor, engulfing the entire area in flames.

34. The flash fire ignited in front of Plaintiffs' faces, severely burning their faces and bodies.

35. Upon information and belief, Defendants were responsible for the activities conducted within the Plant and for the condition of the Plant, including the activities surrounding the welding work being performed on the compressor.

36. The unreasonably high levels of hydrocarbon gases, including natural gas liquids, found in the process equipment at the Plant, coupled with Defendants' improper training of their employees and subcontractors, including Plaintiffs, created a dangerous condition at the Plant.

37. Defendants knew or should have known that the unreasonably high levels of hydrocarbon gases, including natural gas liquids, found in the process equipment at the Plant, coupled with Defendants' improper training of their employees and subcontractors, including Plaintiffs, created a dangerous condition at the Plant.

38. Defendants owed a duty to Plaintiffs to ensure that the condition of or activities conducted at the Plant were not dangerous and would not unreasonably place individuals at risk of harm.

39. Defendants owed a duty to Plaintiffs to take reasonable steps to reasonably protect them from dangerous conditions of which Defendants knew or should have known.

40. Despite their actual or constructive knowledge of dangerous conditions at the Plant, Defendants breached the duties owed to Plaintiffs by, *inter alia*, performing improper lockout and tagout procedures, allowing unreasonably high levels of hydrocarbon gases, including natural gas liquids, to collect in the process equipment at the Plant, allowing workers to service the process equipment with high levels of hydrocarbon gases present, providing insufficient and improper training to their employees and subcontractors, including Plaintiffs, concerning the methods and observations that may be used to detect the presence or release of hazardous chemicals in the work

area, providing insufficient and improper training to their employees and subcontractors, including Plaintiffs, concerning gas monitoring, continuous monitoring devices, visual appearance or odor of hazardous chemicals, and providing insufficient and improper training to their employees and subcontractors, including Plaintiffs, concerning the use of power tools at the Plant.

41. Defendants' failures, as referenced above, were unreasonable and Defendants unreasonably failed to protect Plaintiffs from dangerous conditions at the Plant of which Defendants knew or should have known.

42. As a result of Defendants' breaches of the duties owed to Plaintiffs, the June 5, 2019 flash fire and explosion occurred.

43. As a result of Defendants' breaches of the duties owed to Plaintiffs, Plaintiffs suffered significant bodily injury and other damages, including severe burns to their faces and bodies.

44. The welding work being performed by Plaintiffs at the Plant on June 5, 2019 was not part of Defendants' regular business in operating and managing the Plant.

45. The welding work being performed by Plaintiffs at the Plant on June 5, 2019 was not something that Defendants routinely or regularly performed in operating and managing the Plant.

46. If Plaintiffs or their employer did not perform the welding work at the Plant on June 5, 2019, Defendants would not have performed the welding work themselves.

47. Upon information and belief, neither Defendant has performed welding work at the Plant.

48. Upon information and belief, Defendants customarily retained Plaintiffs' employer or other specialty welding companies to perform welding work at the Plant.

49. Upon information and belief, Defendants did not employ welders like Plaintiffs on their staff.

50. Upon information and belief, Plaintiffs were a part of a specialty welding crew that Defendants did not have or employ, which specialties included fabricating and welding pipes for compressors and similar units.

51. Plaintiffs did not contribute in any way to the June 5, 2019 explosion.

52. Plaintiffs acted reasonably under the circumstances.

53. Plaintiffs are not comparatively at fault.

54. Plaintiffs have reasonably mitigated their respective damages.

55. At all times relevant, Travelers' Insurance provided workers' compensation insurance and/or benefits to Plaintiffs' employer. Pursuant to the Workers' Compensation Act of Colorado (*see* C.R.S. §8-40-101, *et. seq.*, hereinafter the "Act"), and the incident that occurred on June 5, 2019, (the facts surrounding which are set forth more fully herein), Travelers' Insurance has paid, and/or is obligated to pay, workers' compensation benefits to, or on behalf of, Plaintiffs.

56. Pursuant to the Act, Travelers' Insurance has a statutory interest and/or a lien, and/or a right of recovery concerning benefits paid to and/or on behalf of Plaintiffs ("Workers' Compensation Damages) from Defendants, whose actions were the proximate cause of both Plaintiffs' injuries and the related Workers' Compensation Damages. *See* C.R.S. §8-41-203.

57. Pursuant to the Act, Travelers' Insurance is provided a statutory right of subrogation to recover monies expended on behalf of Plaintiffs in an amount to be proven at trial. *See* C.R.S. §8-41-203.

## IV. Claims
## FIRST CLAIM FOR RELIEF
### (Premises Liability – all Plaintiffs against all Defendants (in the alternative))

58. Plaintiffs incorporate by reference all allegations contained above as if fully set forth herein.

59. On June 5, 2019, and at all times relevant and material hereto, Defendants were in possession of the Plant and the equipment at the Plant (the "Property"), and/or were legally responsible for the condition of the Property or for the activities conducted or circumstances existing on or within the Property.

60. On June 5, 2019, Defendants were therefore landowners of the Property, pursuant to Section 13-21-115, C.R.S.

61. On June 5, 2019, Plaintiffs were at the Property to transact business of which they and Defendants were mutually interested.

62. Specifically, Plaintiffs were invited to the Property to perform welding work at the Property for Defendants' benefit.

63. Plaintiffs were therefore invitees on the Property on June 25, 2019, pursuant to Section 13-21-115, C.R.S., at all times relevant thereto.

64. Pursuant to Colorado law, including but not limited to the Premises Liability Act, Section 13-21-115, C.R.S., Defendants owed Plaintiffs a duty to exercise reasonable care to reasonably protect Plaintiffs from dangerous conditions about which Defendants knew or should have known.

65. Defendants knew, or should have known, that dangerous conditions existed within the Property, including the likelihood of flash fire hazards caused by the collection of hazardous chemicals around ignition sources.

66. Defendants breached the duties they owed to Plaintiffs under the Premises Liability Act by failing to take reasonable steps to reasonably protect Plaintiffs from the dangerous conditions on the Property of which Defendants knew or should have known.

67. Specifically, Defendants breached the duties they owed to Plaintiffs under the Premises Liability Act by, *inter alia*, performing improper lockout and tagout procedures, allowing unreasonably high levels of hydrocarbon gases, including natural gas liquids, to collect in the process equipment at the Plant, allowing workers to service the process equipment with high levels of hydrocarbon gases present, providing insufficient and improper training to their employees and subcontractors, including Plaintiffs, concerning the methods and observations that may be used to detect the presence or release of hazardous chemicals in the work area, providing insufficient and improper training to their employees and subcontractors, including Plaintiffs, concerning gas monitoring, continuous monitoring devices, visual appearance or odor of hazardous chemicals, and providing insufficient and improper training to their employees and subcontractors, including Plaintiffs, concerning the use of power tools at the Plant.

68. As a direct and proximate result of the June 5, 2019 incident and Defendants' actions or inaction, Plaintiffs have sustained bodily injuries, physical impairments, loss of enjoyment of life, and physical and mental pain and suffering, in amounts to be determined at the time of trial.

69. As a direct and proximate result of the June 5, 2019 incident and Defendants' actions or inaction, Plaintiffs have sustained medical and rehabilitation expenses in the past and may incur medical and rehabilitation expenses in the future, in amounts to be determined at the time of trial.

70. As a direct and proximate result of the June 5, 2019 incident and Defendants' actions or inaction, Plaintiffs have sustained lost wages, lost earnings, and diminution of their earning capacity, in amounts to be determined at the time of trial.

71. Because of Defendants' action or inaction, Plaintiffs are entitled to recover all their respective damages and losses in amounts to be proven at the time of trial.

**WHEREFORE**, Plaintiffs pray for judgment in their favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from June 5, 2019, post-judgment interest as provided for by law, costs, expert witness fees, and all other damages to be determined at trial, and for such other and further relief as the Court deems proper.

**SECOND CLAIM FOR RELIEF**
(*NEGLIGENCE – ALL PLAINTIFFS AGAINST ALL DEFENDANTS (IN THE ALTERNATIVE)*)

72. Plaintiffs incorporate by reference all allegations contained above as if fully set forth herein.

73. Defendants owed a duty to Plaintiffs to ensure that the Plant and the equipment at the Plant were maintained in such a manner to safeguard against any hazards which would place individuals, including Plaintiffs, at risk of harm.

74. Specifically, Defendants owed a duty to Plaintiffs to maintain the Plant and the equipment at the Plant so that anyone performing welding work was not subjected to flash fire hazards caused by the collection of hazardous chemicals around ignition sources.

75. Defendants breached those duties by, *inter alia*, performing improper lockout and tagout procedures, allowing unreasonably high levels of hydrocarbon gases, including natural gas liquids, to collect in the process equipment at the Plant, allowing workers to service the process equipment with high levels of hydrocarbon gases present, providing insufficient and improper training to their employees and subcontractors, including Plaintiffs, concerning the methods and observations that may be used to detect the presence or release of hazardous chemicals in the work area, providing insufficient and improper training to their employees and subcontractors, including Plaintiffs, concerning gas monitoring, continuous monitoring devices, visual appearance or odor of hazardous chemicals, and providing insufficient and improper training to their employees and subcontractors, including Plaintiffs, concerning the use of power tools at the Plant.

76. Defendants' actions were therefore unreasonable and negligent.

77. Defendants' unreasonable and negligent actions directly resulted in the June 5, 2019 incident.

78. As a direct and proximate result of the June 5, 2019 incident and Defendants' negligence, Plaintiffs have sustained bodily injuries, physical impairments, loss of enjoyment of life, and physical and mental pain and suffering, in amounts to be determined at the time of trial.

79. As a direct and proximate result of the June 5, 2019 incident and Defendants' negligence, Plaintiffs have sustained medical and rehabilitation expenses in the past and may incur medical and rehabilitation expenses in the future, in amounts to be determined at the time of trial.

80. As a direct and proximate result of the June 5, 2019 incident and Defendants' negligence, Plaintiffs have sustained lost wages, lost earnings, and diminution of his earning capacity, in amounts to be determined at the time of trial.

81. Because of Defendants' negligence, Plaintiffs are entitled to recover all their respective damages and losses in amounts to be proven at the time of trial.

**WHEREFORE**, Plaintiffs pray for judgment in their favor and against Defendants for general and special damages as proven at trial, pre-judgment interest from June 5, 2019, post-judgment interest as provided for by law, costs, expert witness fees, and all other damages to be determined at trial, and for such other and further relief as the Court deems proper.

## V. JURY DEMAND

Plaintiffs hereby demand a trial to a jury of six (6) on all issues so triable.

DATED June 4, 2021.

Plaintiffs' Addresses:

Tyler Ratzlaff
225 Ponderosa
Parachute, Colorado 81635

Toby Cotton
2998 Fenwick Lane
Grand Junction, Colorado 81504

Trevor Tabor
2884 Pinehurst Lane
Grand Junction, Colorado 81503

SPRINGER AND STEINBERG, P.C.

By:  */s/ Matthew M. Holycross*
Matthew M. Holycross, Esq.
Springer & Steinberg, P.C.
1600 Broadway, Suite 1200
Denver, Colorado 80202
Telephone:  303.861.2800
Facsimile:  303.832.7116
Email:  mholycross@springersteinberg.com
*Counsel for Plaintiffs*